**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLEAN JERSEY SOLAR, L.L.C.,<br><br>   Plaintiff,<br><br>   v.<br><br>EFFISOLAR ENERGY CORPORATION,<br><br>   Defendant/Third-<br>   Party Plaintiff,<br><br>   v.<br><br>JOHN M. CARUSO, et al.,<br><br>   Third-Party<br>   Defendants. | Civil Action No. 12-2008 (MAS) (LHG)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court on a motion by Plaintiff Clean Jersey Solar, L.L.C. ("Plaintiff" or "Seller") and Third-Party Defendants John M. Caruso and Scott Caruso ("Third-Party Defendants") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 42.) Defendant/Third-Party Plaintiff Effisolar Energy Corporation ("Defendant" or "Buyer") cross-moves to dismiss Plaintiff's Complaint with prejudice. (ECF No. 47-1.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Plaintiff and Third-Party Defendants' motion for summary judgment is granted in part, and Defendant's motion to dismiss is granted in part.

I.  **Background**

The facts of this case are not in dispute. (*See* Def.'s Opp'n Br. 1, ECF No. 47-1.) Seller brings this action for breach of a real estate contract. (*See generally* Compl., ECF No. 1.) On August 9, 2010, Buyer and Seller entered into and executed a Purchase and Sale of Real Estate Agreement (the "Agreement"), whereby Buyer agreed to purchase property from Seller for the development and operation of a solar energy facility. (Pl.'s Statement of Undisputed Facts ("SUF") ¶ 1, ECF No. 42-2.) Through the Agreement, Buyer made certain promises to Seller, *inter alia*:

> (f)  Buyer shall pay and be responsible for all PJM Interconnections, Power Purchase Agreements and other items associated with having the solar farm connected to the electric grid, which includes but is not limited to construction permits for installation of the solar farm (connection approvals). This approval shall not be Seller[']s responsibility. Buyer shall pay and be responsible for all site plan development fees including, but not limited to, inspection fees and performance bonds, etc. In the event Buyer terminates this agreement for any or all of the properties for reasons such as, but not limited to, unable to obtain the referenced development requirements, it shall forfeit its deposits and assign all PJM applications, engineering plans/documents, etc. for those properties to Seller, free and clear, such that Seller shall have the right to proceed with these applications and approvals and remove Buyer[']s name from the same.

(*Id.* ¶ 2; Ex. E ("Agreement") to Pl.'s Mot., ECF No. 42-5.) The Agreement further outlines each party's respective rights in the case of default by the other. Specifically, the Agreement states, in pertinent part, "[i]n the event, the Buyer is in default, the Seller shall be entitled to retain all of its Deposit monies as liquidated damages as well as all free and clear ownership of all site plan engineering, PJM application documents and interconnection agreements." (Certification of Scott H. Caruso ("Caruso Cert.") ¶ 7 (citing Agreement ¶ 14(a)), ECF No. 48-1.)

2

After a closing date was set, Buyer requested an extension of time to close under the Agreement. (SUF ¶ 4.) On June 30, 2011, Buyer and Seller entered into and executed an Amendment of Agreement of Purchase and Sale (the "Amendment"). (*Id.* ¶ 11.) As consideration for the Amendment and the extension of the closing date, Buyer agreed to pay Seller $50,000, that was "non-refundable and non-applicable to the Purchase Price," by either the closing date or September 1, 2011, whichever came first. (*Id.* ¶ 12; Ex. H ("Amendment") to Pl.'s Mot. ¶ 2, ECF No. 42-5.) The Amendment further stated:

> Except as otherwise provided herein, Buyer hereby waives and gives up any and all rights, remedies, causes of actions, claims, allegations, etc. it may have against Seller, which includes, but is not limited to, any default provisions and other provisions of the Purchase Agreement. It also hereby gives up any and all rights to all deposits and other monies that have been expended and tendered to Seller to date. However, if a closing does occur, the initial deposit and second deposit totaling $309,500.00, as set forth in the purchase agreement, shall be applicable to the Purchase Price.

(*Id.* ¶ 5.)

On May 26, 2011, Buyer received correspondence from PJM Interconnections ("PJM") that it owed $1,039,091 to PJM that was due and payable by the close of business on July 26, 2011. (SUF ¶ 13; Ex. I to Pl.'s Mot, ECF No. 42-5.) On July 27, 2011, Buyer's attorney advised Seller's attorney for the first time of the monies owed to PJM and explained that $200,000 needed to be tendered to PJM immediately or all of PJM's rights for the project would be terminated. (SUF ¶ 14.) Buyer refused to pay the $200,000 to PJM, and Seller advised Buyer that this was a breach of the Agreement. (*Id.* ¶ 15.) Because all of PJM's rights and queue positions would be immediately terminated if the payment was not received, Seller paid PJM the $200,000 fee. (*Id.*) Thereafter, Buyer advised Seller that it would not proceed with the purchase of the property under the Agreement and the Amendment and refused to pay the $200,000 Seller remitted to PJM and

3

the $50,000 for extending the closing date. (*Id.* ¶¶ 16-17.) At the time of Buyer's breach, Seller was in possession of, and retained, Buyer's $309,500 deposit. (Def.'s Opp'n Br. 1; Certification of Lawrence Neuman ("Neuman Cert.") ¶ 3, ECF No. 47.)

On April 4, 2012, Seller filed a complaint against Buyer asserting two counts: (1) breach of the Amendment and (2) breach of the Agreement. (*See generally* Compl.) Seller seeks $250,000 in damages. (*Id.*) On May 16, 2012, Buyer answered the Complaint and filed a "Counterclaim and Third Party Complaint" against Seller and Third-Party Defendants alleging they knowingly made false representations to Buyer with the intent to induce Buyer to enter into the Amendment and that Buyer relied on those false representations. (Answer, Counterclaim & Third-Party Compl. 8, ECF No. 6.) Buyer seeks rescission of the Amendment and damages. (*Id.* at 9.)

## II. Analysis

Plaintiff and Third-Party Defendants request judgment be entered in favor of Plaintiff on its claims against Buyer for breach of the Amendment and the Agreement and request dismissal with prejudice of Buyer's Counterclaim and Third-Party Complaint. Buyer consents to dismissal of its Counterclaim and Third-Party Complaint.[1] (Def.'s Opp'n Br. 1 n.2 ("Discovery did not

---

[1] Through their reply, Plaintiff and Third-Party Defendants assert a "counter motion for costs and damages." (Pl.'s Reply Br. 21, ECF No. 48.) Plaintiff and Third-Party Defendants argue that because Defendant consents to dismissal of its Counterclaim and Third-Party Complaint, they are entitled to costs of the action. (*Id.*) Specifically, Plaintiff and Third-Party Defendants assert that Defendant's consent to dismissal is an admission that their claims were "willfully false and frivolous." (*Id.*) Plaintiff and Third-Party Defendants, however, provide no other justification based on established law why costs should be granted to them based on Defendant's consent to dismissal. Additionally, because this request for costs was first brought in Plaintiff and Third-Party Defendants' reply brief, Defendant has not had a chance to respond. *See Tigert v. Ranbaxy Pharm., Inc.*, No. 12-154, 2012 WL 6595806, at *5 (D.N.J. Dec. 18, 2012) (citing *United States v. Boggi*, 74 F.3d 470, 478 (3d Cir. 1996) (declining to consider arguments raised in a reply brief); *Stern v. Halligan*, 158 F.3d 729, 731 n.3 (3d Cir. 1998) ("A party cannot raise issues for the first time in a reply brief."); *D'Alessandro v. Bugler Tobacco Co.*, No. 05-5051, 2007 WL 130798, at

reveal any cause of action for which the Defendants could assert a counter-claim.").) As to summary judgment on Plaintiff's breach of contract claims, Buyer argues that a further award of $250,000 to Seller for Buyer's breach would constitute a double recovery because Seller already retained Buyer's $309,500 deposit as liquidated damages and, thus, Seller's claims should be dismissed. (*Id.* 1.)

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Absent a genuine dispute for trial, summary judgment as a matter of law is proper.

Here, the parties agree that there is no issue of material fact and that only a question of law is before the Court—whether the payment of $250,000 from Buyer to Seller would constitute a double recovery.[2] In support of its position, Seller only cites case law regarding the summary judgment standard, and provides no support, outside the contract language, as to why judgment should be granted in its favor. In opposition, Buyer argues that the liquidated damages provision is enforceable and judgment in the amount of $250,000 would constitute a double recovery barred

---

*2 (D.N.J. Jan. 12, 2007)). Therefore, Plaintiff and Third-Party Defendants' request for costs is denied.

[2] Plaintiff additionally argues that Defendant does not have standing to argue an additional award of damages would constitute double recovery because Defendant did not previously assert this position in its pleadings or through discovery. (Pl.'s Reply Br. 7-8.) Defendant, however, did assert as an affirmative defense that "Plaintiff has sustained no damages." (Answer, Counterclaim & Third-Party Compl. 6.)

5

by established law. (Def.'s Opp'n Br. 4-6.) In support of its position, Buyer cites a litany of inapplicable case law that hold a plaintiff may not recover both prejudgment interest and liquidated damages, because it would constitute a double recovery. (*Id.*) Buyer additionally asserts that New Jersey law governs the Agreement (*id.* at 3 n.4), however all the case law Buyer relies on applies Pennsylvania law, excluding one case (*id.* at 4-6).

In New Jersey, "the traditional model for breach of contract damages permits a plaintiff to recover for such losses as may fairly be considered to have arisen naturally from the defendant's breach of contract." *Murphy v. Implicito*, 392 N.J. Super. 245, 267 (App. Div. 2007) (internal quotation marks omitted). However, "[n]one can recover compensation twice in respect of the same injury." *The Atlas*, 93 U.S. 302, 310 (1876); *see also Brum v. Int'l Terminal Operating Co.*, 125 N.J. Super. 558, 562 (App. Div. 1973) (holding it would be improper to permit a plaintiff to recover twice for the same injury); 25 C.J.S. Damages § 11 ("The overlapping of damages is generally not permissible, and a person is not entitled to recover twice for the same elements of damage growing out of the same occurrence or event."). Accordingly, "a plaintiff whose case concerns a single course of conduct and a single injury may not recover those profits twice or thrice over for each legal theory advanced in favor of liability." *Hailey v. City of Camden*, 650 F. Supp. 2d 349, 357 (D.N.J. 2009) (internal quotation marks omitted).

Here, Seller asserts two separate breaches by Buyer: (1) breach of the Amendment and (2) breach of the Agreement. First, Seller asserts Buyer breached the Amendment by failing to remit the $50,000 owed in consideration for extending the closing date. Buyer does not dispute that it made a bargained-for promise and breached it. Instead, Buyer argues that the language of the Amendment includes the liquidated damages provision of the Agreement and, thus, no further funds beyond the deposit monies are owed. Through the Amendment, Seller promised to extend

the closing date by one month for an additional non-refundable $50,000. Buyer's breach of the Amendment is a breach of a separate promise and a separate injury. Under New Jersey law, compensatory damages are used to compensate an injured party for losses due to the breach of a contract and put it in as good of a position had the contract not been breached. *See Donovan*, 91 N.J. at 444. Furthermore, the language relied on by Buyer in the Amendment is not a liquidated damages provision, but rather confirms the original agreement of the parties was still in effect. Accordingly, an award of $50,000 to Seller for Buyer's breach of the Amendment does not constitute a double recovery, but instead makes Seller whole for a separate and distinct injury suffered due to Buyer's breach.

Second, Seller asserts Buyer breached the Agreement by failing to pay all fees necessary to PJM associated with the connection of the solar farm to the electric grid and failing to proceed with the purchase of the property. Buyer does not dispute that it failed to pay certain fees to PJM in breach of the Agreement and that Seller then paid those fees. Buyer made a bargained-for promise and breached it; as a result, Buyer is responsible to Seller for the resulting damages. The parties, however, bargained for specific damages, or liquidated damages, in the case of default of either party. Specifically, in the case of default by Buyer, Seller was entitled to "retain all of its Deposit monies as liquidated damages *as well as* all free and clear ownership of all . . . PJM application documents." (Agreement ¶ 14(a) (emphasis added).) Although the provision states that Seller is entitled to free and clear ownership of all PJM application documents, the negotiated and contracted language does not allow for the recovery of additional monies if Buyer fails to provide the PJM applications free and clear. As a result, the only monies Seller was entitled to under the liquidated damages provision was the deposit monies.

### III.  Conclusion

For the reasons set forth above, Plaintiff and Third-Party Defendants' motion for summary judgment is granted in part, and Defendant's motion to dismiss is granted in part.  An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: August 20, 2015